# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3944

_____

United States,

        Appellee,

v.

Guadalupe Ortiz-Monroy,

        Appellant.

\*
\*
\*
\*
\*    Appeal from the United States
\*    District Court for the Western
\*    District of Arkansas
\*
\*
\*

_____

Submitted: May 12, 2003

Filed:  June 11, 2003

_____

Before WOLLMAN and BEAM, Circuit Judges, and NANGLE,[1] Senior District Judge.

_____

NANGLE, Senior District Judge.

Defendant Guadalupe Ortiz-Monroy ("Monroy") appeals the district court's denial of his suppression motion and of a sentence reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.  We affirm.

_____

[1] The HONORABLE JOHN F. NANGLE, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

At 10:41 p.m. on the evening of February 26, 2002, Deputy Jeff Smith of the Crawford County Arkansas Sheriff's Department ("Deputy Smith") observed a Ford Expedition traveling eastbound on I-40 within a car length of a passenger car. Through experience and training, Deputy Smith was aware that drug traffickers often use two vehicles traveling in close proximity to transfer drugs, a "load" vehicle followed by a "decoy" vehicle. Deputy Smith followed the two vehicles for a few miles and observed that the second vehicle, the Expedition, had an expired California license tag. When the passenger car swerved across the center line, Smith stopped the Expedition. The passenger car continued traveling East.

In the Expedition were two men who were shaking and appeared nervous. They denied that they had been following anyone. Based on a criminal history check showing that the driver had a prior drug trafficking conviction and on suspicions raised by the driver's statements about the trip, Deputy Smith asked for and obtained consent to search the Expedition. Deputy Smith's drug dog "alerted" to all four tires. Deputy Smith also noted that the spare tire was missing from under the vehicle, and found a small spare tire inside the Expedition.

The Expedition and its tires were searched for drugs but none were found. Believing the Expedition to be a decoy vehicle and the passenger car to be the load vehicle carrying drugs, Deputy Smith radioed for other officers to locate the load vehicle. Deputy Smith described the load vehicle as a little green car or little green Ford.

At approximately 11:40 p.m., Officer Justin Phillips ("Officer Phillips") checked the rest area on the eastbound side of I-40 and saw a dark blue Chevrolet Beretta with California tags which was parked illegally. Officer Phillips saw a man, later identified as Monroy, standing by the rear of the Beretta. As Officer Phillips approached the car, Monroy got into the driver's seat. When Officer Phillips shined his spotlight on the car, Monroy peered at him through the back windshield, then disappeared from sight.

When Officer Phillips reached the driver's side of the car, he observed Monroy lying reclined in the driver's seat with his eyes closed, pretending to be asleep. Officer Phillips knocked on the car window a few times, and then Monroy opened the window. Officer Phillips asked Monroy–who was shaking and sweating–if he was okay, and Monroy said yes. Officer Phillips asked Monroy if he spoke English and Monroy said, "a little."

When Officer Phillips asked to see Monroy's driver's license, Monroy said that he did not have one and handed Officer Phillips a California identification card. When Monroy told Officer Phillips that he was going to California, Officer Phillips responded that Monroy had been headed in the opposite direction and asked if he was lost. Monroy did not respond. Officer Phillips asked Monroy how long he had been in the rest area, and Monroy claimed to have been there for two to three hours. Officer Phillips noticed that the hood and driver's side tire were both warm, and that Monroy had a cell phone in the vehicle but no luggage. At this point, Officer Phillips determined that Monroy's vehicle was the load vehicle sought by Deputy Smith.

Officer Phillips returned to his patrol car and proceeded to run a check on Monroy's identification card. Officer Phillips saw Monroy "bobbing up and down" in the car and called for backup. Officer Phillips then approached the car again and asked why Monroy was so nervous. Officer Phillips asked whether there was anything illegal in the car, and Monroy produced a kitchen knife from under the driver's seat.

Officer Phillips asked Monroy for consent to search the car for illegal substances or other contraband and explained to Monroy why he was requesting permission to search, noting Monroy's lack of luggage and travel in the wrong direction to California. Monroy got out of the car and consented to a search. Officer Phillips found a very heavy tire inside the trunk, which did not match the tires on the car. Monroy said, "that's not my tire." Officers Philips and Harris found cocaine inside the tire. The officers arrested Monroy and read him his Miranda rights.

3

Monroy repeated that the tire did not belong to him, and then stopped talking.

Monroy was indicted for possession with intent to distribute 500+ grams of a mixture containing cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii). Monroy entered a plea of not guilty and filed a motion to suppress evidence of the cocaine seized from his car. After holding a suppression hearing, the magistrate judge recommended that the suppression motion be denied. The district court accepted the magistrate's recommendation and denied Monroy's suppression motion. Monroy appeals that denial.

With respect to a suppression motion, we review the district court's conclusions of law de novo and its factual findings for clear error. United States v. Booker, 269 F.3d 930, 931 (8th Cir. 2001). First, we find that Officer Phillips's encounter with Monroy did not implicate the Fourth Amendment because it was consensual. See United States v. Perez-Sosa, 164 F.3d 1082, 1084 (8th Cir. 1998) (no seizure of individual when officer approaches and "requests identification, as long as the officer does not convey that compliance is required."); United States v. Jones, 990 F.2d 405, 408 (8th Cir. 1993) (Fourth Amendment is not implicated when "officers merely approach and question a person, as long as the account is consensual in nature and does not involve coercion or restraint of liberty."). We find no error in the court's finding that Monroy willingly engaged in conversation with Officer Phillips and consented to the search of his car. Because Monroy's entire encounter with Officer Phillips was consensual, it was outside the ambit of the Fourth Amendment and did not constitute an unlawful seizure.

Alternatively, we find that Officer Phillips's encounter with Monroy was an investigatory stop and thus excepted from the Fourth Amendment's requirement that seizure be made pursuant to a warrant or predicated on probable cause. See Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1879-80, 20 L.Ed.2d 889 (1968)). A Terry investigatory stop allows an officer briefly to detain a citizen if the officer has a reasonable suspicion that "criminal activity may be afoot." Id., 392 U.S. at 30, 88

4

S.Ct. at 1884. As a reviewing court, we must look at the totality of the circumstances to determine whether Officer Phillips had a "particularized and objective basis" for suspecting legal wrongdoing. See United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002).

In forming a basis for suspicion, officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Id., 534 U.S. at 273, 122 S.Ct. at 751(quoting United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). Similarly, an officer may rely on information provided by other officers and all the information known to a team of officers involved in the investigation to provide justification for a stop. U.S. v. Robinson, 119 F.3d 663, 666-67 (8th Cir. 1997). While "an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." Arvizu, 534 U.S. at 274, 122 S.Ct. at 751 (internal quotation marks and citation omitted).

After examining the record, we conclude that at the time Officer Phillips made contact with Monroy at the rest area, he had a reasonable suspicion that Monroy was involved in criminal activity based upon the following. Monroy's car was parked illegally. His car fit the general description of a dark colored passenger car traveling with the Expedition. Both the Expedition and Monroy's car had California tags. A drug dog had alerted to the tires on the Expedition, indicating that drugs had been present at some time. Based on his training and experience, Deputy Smith knew that drug transporters often travel in tandem. Monroy's location at a rest stop on I-40, East of where the Expedition had been stopped, was consistent with him waiting for the Expedition. Monroy got into the car and pretended to be asleep immediately upon seeing Officer Phillips. Taken together, these factors created a reasonable suspicion that Monroy was involved in illegal activity and justified Officer Phillips's detention of Monroy in order to investigate.

Once a lawful stop has occurred, officers are entitled to conduct an investigation "reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Cummins, 920 F.2d 498, 502 (8th Cir. 1990) (quoting Terry, 392 U.S. at 20, 88 S.Ct. at 1879); see United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001). Here, the scope of Officer Phillips's investigatory stop was strictly tied to and justified by the circumstances. Officer Phillips's request for identification and an explanation of Monroy's presence at the rest stop were "minimally intrusive." See United States v. Dawdy, 46 F.3d 1427, 1430 (8th Cir. 1995); United States v. White, 81 F.3d 775, 778 (8th Cir. 1996). During their initial exchange, Officer Phillips noticed Monroy's furtive and suspicious behavior. He noted that Monroy did not have a valid driver's license and provided seemingly false information about his destination and how long he had been at the rest area. Based on Monroy's erratic behavior, Officer Phillips came to believe that Monroy was driving the load vehicle. By requesting Monroy's consent to search his vehicle, Officer Phillips conducted his investigation in "a diligent and reasonable manner." See United States v. Sharpe, 470 U.S. 675, 687, 105 S.Ct. 1568, 1576, 84 L.Ed.2d 605 (1985). Finally, as discussed above, Monroy consented to the search of his vehicle. We therefore affirm the district court's denial of Monroy's suppression motion.

Monroy also appeals the district court's refusal to grant him an acceptance of responsibility reduction. We review the sentencing court's decision to award or deny an acceptance of responsibility reduction for clear error. See United States v. Ervasti, 201 F.3d 1029, 1043 (8th Cir. 2000). We give great deference to the factual determinations of the district court and reverse a finding only if it is so clearly erroneous that it lacks foundation. See United States v. Ngo, 132 F.3d 1231, 1233 (8th Cir. 1997). The fact that Monroy repeatedly insisted during the sentencing hearing that he had no knowledge of the drugs in the vehicle, did not know who placed them there and was not paid or hired to transport them supports the district court's finding that he had not accepted responsibility. We conclude that the district court did not err in finding that Monroy's conduct was inconsistent with an

acceptance of responsibility and in denying a reduction under U.S.S.G. § 3E1.1.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.