## COMMONWEALTH vs. ELVIN STEPHENS.

Essex. January 8, 2008. - May 8, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Collateral Estoppel. Practice, Criminal,* Collateral estoppel, Motion to suppress. *Constitutional Law,* Search and seizure, Investigatory stop, Reasonable suspicion. *Search and Seizure,* Threshold police inquiry, Reasonable suspicion, Automobile. *Controlled Substances.*

A Superior Court judge correctly concluded, as a matter of law, that principles of collateral estoppel did not prohibit the Commonwealth from relitigating a suppression issue against one defendant after the issue had been resolved against the Commonwealth in an earlier proceeding against a second defendant in District Court. [375-381]

A Superior Court judge did not err in denying a criminal defendant's motion to suppress evidence seized during a warrantless stop and search by police of the parked automobile in which the defendant was sitting, where the police officers' actions in approaching the vehicle and opening the doors was justified by reasonable suspicion to believe both that the officers' safety was in danger and that an illegal drug transaction was underway [381-385]; and where the observations made by officers during that stop elevated their reasonable suspicion to probable cause that justified their arrest of the defendant and their search of the vehicle incident to that arrest [385-386].

Evidence at a criminal trial was sufficient to support the defendant's conviction of possession of cocaine with intent to distribute. [386-388]

INDICTMENT found and returned in the Superior Court Department on August 27, 2003.

A pretrial motion to suppress evidence was heard by *Richard E. Welch, III,* J.; a motion for reconsideration was also heard by him; and the case was tried before *Howard J. Whitehead,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Allison J. Koury* for the defendant.

*Kenneth Bresler,* Assistant District Attorney, for the Commonwealth.

*David M. Skeels,* Committee for Public Counsel Services, for

Committee for Public Counsel Services, amicus curiae, submitted a brief.

*Daniel F. Conley*, District Attorney, & *John P. Zanini & Helle Sachse*, Assistant District Attorneys, for District Attorney for the Suffolk District & others, amici curiae, submitted a brief.

MARSHALL, C.J. We decide in this case whether the Commonwealth is collaterally estopped from relitigating a suppression issue after the issue has been resolved against it in an earlier proceeding against a different defendant. In connection with an alleged drug transaction that occurred in May, 2003, the defendant, Elvin Stephens, and a codefendant were charged in the Lawrence Division of the District Court Department with possessing cocaine with intent to distribute in violation of G. L. c. 94C, § 32A,[1] possession of cocaine in violation of G. L. c. 94C, § 34,[2] and conspiracy to violate the controlled substances act in violation of G. L. c. 94C, § 40. Stephens was then indicted as a subsequent offender for distributing cocaine, and his case proceeded to the Superior Court, while his codefendant's case remained in the District Court.

In the District Court, the codefendant moved to suppress evidence seized during a warrantless stop and search of the automobile in which he and Stephens were sitting when they were stopped — a search that underlay the charges against Stephens and the codefendant — and statements made by him during the search. The judge allowed the codefendant's motion,[3] from which interlocutory ruling the Commonwealth did not seek leave to appeal. The charges against the codefendant subsequently were dismissed for failure to prosecute.

In the interim, Stephens moved in the Superior Court to sup-

[1]Elvin Stephens was charged as a subsequent offender under G. L. c. 94C, § 32A (*b*). The codefendant was charged with a first offense under G. L. c. 94C, § 32A (*a*).

[2]Stephens was charged as a subsequent offender on this count as well.

[3]The judge in the District Court concluded: "(1) Police did *not* have reasonable suspicion; articulable [and] specific facts were *not* present to justify, objectively, that [the codefendant] had [committed], was [committing] or was about to commit a crime. (2) Even the 'whole silent movie['] as seen by this experienced narcotics investigator was *not* sufficient to justify the threshold inquiry. This hunch, subsequently verified, warranted further surveillance but did not permit the seizure." (Emphasis in original.)

press the same evidence, as well as statements made by him during the search. Several weeks after the codefendant's motion had been allowed — a development unknown to Stephens — an evidentiary hearing took place on his motion in the Superior Court. The judge in the Superior Court denied Stephens's motion to suppress, issuing detailed findings of fact and rulings of law. He concluded that the police officers had reasonable suspicion to stop Stephens and probable cause to search his vehicle.

Months later, Stephens learned that the codefendant had successfully moved to suppress the evidence in the District Court. In consequence, Stephens moved for reconsideration of the denial of his motion to suppress, claiming that the Commonwealth was collaterally estopped from relitigating the propriety of the search because the issue had been resolved against it in the District Court. The Superior Court judge (who had earlier ruled on Stephens's motion to suppress) denied the motion, concluding that "mutuality of the parties must exist in the criminal context" and there was no mutuality here because "the defendant himself" was not a party in the District Court case. After an initial mistrial, Stephens was tried and convicted of distributing cocaine, and was convicted as a subsequent offender. He appealed, and we transferred the case here on our own motion.

In addition to the collateral estoppel claim, we must resolve whether (1) if collateral estoppel does not apply, the Superior Court judge erred in denying Stephens's motion to suppress; and (2) the evidence was sufficient to prove that Stephens was the seller rather than the buyer of cocaine. For reasons we shall explain, we agree with the judge in the Superior Court that the suppression order issued in the District Court in the codefendant's case did not have preclusive effect against the Commonwealth in this case. We further conclude that the stop and search of Stephens's motor vehicle was lawful and that there was sufficient evidence to support Stephens's conviction. We affirm.

1. *Factual background.* We summarize in some detail the facts found by the motion judge, all of which are supported by the evidence. See *Commonwealth* v. *Sneed*, 440 Mass. 216, 217 (2003); *Commonwealth* v. *Morse*, 427 Mass. 117, 118 (1998).

During the early evening of May 22, 2003, two "experienced"

State police officers, in the motion judge's words, Sergeant Francis Hughes and Trooper Ernest Doherty, were conducting a surveillance of the parking lot of a Denny's restaurant located at the intersection of two highways in Lawrence. This was a "prime location for" and "frequent meeting place for illegal drug transactions." In that general location a "typical modus operandi" for an illegal drug transaction was as follows: a prospective buyer would contact a prospective seller and arrange to meet at one of the establishments within the intersection area; the buyer would arrive first and park his vehicle to await the seller; on arrival of the seller, the two frequently would drive their vehicles to a more private location to consummate the illegal drug transaction.

On the night in question, the two officers were working together, in separate unmarked vehicles. They were watching a grey Honda automobile parked in a rear area of the Denny's parking lot, an area that "was not usually frequented by customers of the Denny's Restaurant." The driver, and sole occupant, of the Honda was later identified as the codefendant. After approximately fifteen to twenty minutes, the officers noted another male, later identified as Stephens, arrive and park his blue Ford Expedition vehicle in a parking space approximately three spaces away from the Honda. There was no apparent contact between the two men, but fully visible to both was a marked Lawrence police cruiser parked in a neighboring lot. After approximately two to three minutes, the codefendant drove his Honda directly in front of the Ford, and stopped. The codefendant then nodded his head in a manner that "indicated that he wished the [Ford] to follow." The codefendant drove out of the parking lot, followed by Stephens in the Ford. The two officers followed surreptitiously in their respective vehicles. Stephens passed the codefendant and led the Honda into a gasoline station parking lot, which was darker and more secluded than the restaurant parking lot. The two men parked their motor vehicles next to each other, as the officers continued to watch from across a highway.

The codefendant left his Honda, opened the passenger door of the Ford and climbed in. At this point the officers drove their cars to the gasoline station lot and parked beside, but not block-

ing, either vehicle. Both officers left their vehicles and approached the Ford, in which Stephens and the codefendant were now seated. Sergeant Hughes approached the passenger's side of the Ford, shining his flashlight into the vehicle, which illuminated the codefendant's shoulder and head. The codefendant looked at Hughes and then turned his head and upper torso and made a movement, which the motion judge described as "furtive," reaching down toward the center console. At the same time, Trooper Doherty approached and illuminated the driver's side of the Ford and saw Stephens look toward him, eyes widened in surprise. The trooper noted that Stephens was holding a black object in the area of his chest, which he quickly lowered to the area of his lap. Fearing that the black object was a weapon, Trooper Doherty immediately opened the driver's side door and grabbed Stephens's hands to minimize the danger to himself. While doing so, he saw "hundreds of dollars" in Stephens's lap. Also in Stephens's lap the trooper saw several clear plastic sandwich bags; the top of each was knotted and one corner cut. Trooper Doherty was aware from his training and experience that the alterations to the plastic bags were consistent with packing illegal drugs.

Trooper Doherty ordered Stephens out of the vehicle, conducted a patfrisk, and, feeling no weapon, informed him of his Miranda rights. At the same time, Sergeant Hughes, concerned about his safety due to the codefendant's "furtive movement toward the console area," opened the passenger door and ordered the codefendant out of the vehicle. He conducted a patfrisk of the codefendant and advised him of his Miranda rights. The police officers then questioned the two men separately. Neither man knew the other's last name. They gave varying explanations of their activities: Stephens said they were meeting to talk, while the codefendant said they were meeting for drinks.

After conferring with Sergeant Hughes, Trooper Doherty searched the front seat area of the vehicle. Under the passenger's seat next to the center console, he found three small clear cellophane bags containing white powder that appeared to him to be cocaine. The trooper collected $345 from the area of the driver's seat, an amount approximating the street value of the three bags of cocaine he had found. The officers then placed

both men under arrest. At trial, Trooper Doherty testified that, subsequent to the arrest, he searched Stephens and found, in his left pants pocket, additional plastic bags that had been altered.

2. *Nonmutual collateral estoppel in criminal cases.* The doctrine of collateral estoppel provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Commonwealth* v. *Lopez*, 383 Mass. 497, 499 (1981), quoting *Ashe* v. *Swenson*, 397 U.S. 436, 443 (1970). In a criminal case, the applicability of the doctrine may derive either from the common law, with roots in civil proceedings, *United States* v. *Oppenheimer*, 242 U.S. 85 (1916); *Commonwealth* v. *Williams*, 431 Mass. 71, 74 (2000) (direct estoppel)[4]; *Commonwealth* v. *Cerveny*, 387 Mass. 280, 284-285 (1982), or from the protection against double jeopardy of the Fifth Amendment to the United States Constitution, *Ashe* v. *Swenson*, *supra* at 445-446; *Commonwealth* v. *Benson*, 389 Mass. 473, 475, cert. denied, 464 U.S. 915 (1983). The latter is not implicated in this case because Stephens was not placed in jeopardy in the District Court. See *Commonwealth* v. *Williams*, *supra* at 74 n.3; *Commonwealth* v. *Cerveny*, *supra* at 284.

The common-law doctrine of collateral estoppel is designed to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Massachusetts Prop. Ins. Underwriting Ass'n* v. *Norrington*, 395 Mass. 751, 756 (1985), quoting *Allen* v. *McCurry*, 449 U.S. 90, 94 (1980). Historically, mutuality of the parties was required in order for collateral estoppel to apply, see *Home Owners Fed. Sav. & Loan Ass'n* v. *Northwestern Fire & Marine Ins. Co.*, 354 Mass. 448, 451-452 (1968), a requirement now abandoned in civil cases. *Id.* at 455. In criminal cases, however, the doctrine of collateral estoppel generally has continued to apply only where there is mutuality of the parties. See *Commonwealth* v. *Benson*, *supra* at 478 n.6. While the application of nonmutual estoppel in civil cases promotes "judicial economy and conserve[s] private

_____

[4]Direct estoppel involves a common issue that arises in a subsequent action on the *same* claim between the parties. See *Commonwealth* v. *Williams*, 431 Mass. 71, 74 n.4 (2000).

resources without unfairness to the litigant against whom estoppel [is] invoked," *Standefer* v. *United States*, 447 U.S. 10, 21 (1980), in criminal cases the policy considerations of efficiency and fairness may be outweighed by the public interest in enforcement of the criminal laws. See *Commonwealth* v. *Cerveny, supra* at 286, where this court noted that "the public interest in securing just and accurate results in the criminal law leads us to conclude that the possibility of inconsistent *verdicts* should not bar the relitigation of an issue previously decided in favor of another defendant" (emphasis added). In this respect Massachusetts common law mirrored Federal law because the United States Supreme Court had "made it clear that the Federal law doctrine of nonmutual collateral estoppel does not apply to criminal cases." *Id.* at 284. See *Standefer* v. *United States, supra* at 25 (doctrine inappropriate where parties not mutual because policy considerations in criminal cases "outweigh the economy concerns that undergird the estoppel doctrine").[5]

While we have considered whether mutuality of the parties is required where inconsistent verdicts are at issue, *Commonwealth* v. *Cerveny, supra*, we previously have not considered whether mutuality is required for an order suppressing evidence to have preclusive effect against the Commonwealth, a question of law we now consider de novo. See *Commonwealth* v. *Edwards*, 444 Mass. 526, 532 (2005) (applying de novo review to question whether to adopt "forfeiture by wrongdoing" doctrine).[6] The "traditional view" holds that mutuality is required for applicability of the collateral estoppel doctrine to suppression orders, as it is for verdicts. 6 W.R. LaFave, Search and Seizure § 11.2(g), at 111 & n.342 (4th ed. 2004) ("If evidence found in a particular

---

[5]Even in civil cases, where the doctrine of nonmutual collateral estoppel may apply, the United States Supreme Court has refused, on policy grounds, to apply it offensively against the government. See *United States* v. *Mendoza*, 464 U.S. 154, 162-163 (1984) (government not bound by ruling against it in earlier lawsuit, brought by different party, pertaining to constitutionality of administration of immigration statute).

[6]Contrary to the claim of the Commonwealth, the doctrine of collateral estoppel may apply to issues decided at a suppression hearing. See *Commonwealth* v. *Cabrera*, 449 Mass. 825, 829 (2007); *Commonwealth* v. *Ringuette*, 443 Mass. 1003 (2004). Cf. *Commonwealth* v. *Williams, supra* at 74 & n.4 (Commonwealth bound under issue preclusion principles by suppression order entered in prior action against same defendant on same claim).

search is to be offered in the separate trials of defendants *A* and *B* and a motion to suppress that evidence is made by *A* in his case, under the traditional view the ruling thereon does not govern in *B*'s case"). See *United States* v. *Maybusher*, 735 F.2d 366, 370 (9th Cir. 1984), cert. denied, 469 U.S. 1110 (1985) (order suppressing evidence against codefendants did not have preclusive effect because "it would be unfair to hold the Government in this matter to the determination of the issue regarding the search" in codefendants' case where government may not have had "incentive" to litigate question fully); *State* v. *Stauffer*, 112 Ariz. 26, 29 (1975) (State not bound by order suppressing evidence in earlier case against codefendant "because the parties to the motion to suppress the evidence were different"); *People* v. *Hall*, 279 Ill. App. 3d 602, 605 (1996) (defendant could not invoke collateral estoppel to bar relitigation of issue in codefendant's previously allowed motion to suppress evidence because "mutuality is required before collateral estoppel applies in a criminal case").[7]

Stephens argues that we should reject the traditional view because "[c]ases refusing to apply nonmutual collateral estoppel against the government were decided on a much different basis and in a much different context than the present matter." Pointing to *Standefer* v. *United States*, *supra*, and *Commonwealth* v. *Cerveny*, *supra*, he correctly notes that courts have permitted inconsistent verdicts, refusing to give a defendant the benefit of a codefendant's acquittal and explaining that there may be any number of reasons why the codefendant was acquitted. See, e.g., *Commonwealth* v. *Cerveny*, *supra* at 285 (finding of not guilty can result from factors having nothing to do with

[7]The District of Columbia Court of Appeals has concluded that in a criminal case, even where there is mutuality of the parties, the common-law doctrine of collateral estoppel does not apply in the context of an order suppressing evidence. See *United States* v. *McMillian*, 898 A.2d 922, 936 (D.C. 2006). That case involved a subsequent prosecution against the same defendant for a different crime where the evidence supporting both prosecutions resulted from the same stop and arrest, but where double jeopardy was not implicated. *Id.* Noting its previous "pronouncements of reluctance to apply collateral estoppel principles in criminal cases, beyond those implicating double jeopardy," *id.* at 931, the court concluded that " 'strong policy considerations' attached to criminal cases would dictate against application of the collateral estoppel doctrine to the case before us." *Id.* at 936.

defendant's actual guilt, including "an exclusionary rule of evidence, inadequate investigation or proof, the composition of the jury, or the defendant's own insanity"). In contrast, he contends, a finding of no probable cause to stop and search is a "clean cut" issue "particularly suited" to collateral estoppel. *People* v. *McGriff*, 130 A.D.2d 141, 152 (N.Y. 1987). We are not persuaded. While the issues of reasonable suspicion to stop or probable cause to search may be more "clean cut," the allowance of a motion to suppress in one case may result from factors that have little to do with the validity of a stop or search. In this case, the inconsistent suppression decisions were not based on the same evidence: in the District Court the Commonwealth called only one witness, Trooper Doherty, to testify. In contrast, both officers testified at Stephens's suppression hearing in the Superior Court, describing in somewhat greater detail not only their observations of Stephens and the codefendant, but also their experiences with illegal drug transactions in the area where the events occurred. Cf. *State* v. *Gonzalez*, 75 N.J. 181, 195 (1977) (State produced no new evidence at second suppression hearing to support validity of search and inconsistent adjudications therefore based on same facts). For the same reasons we have concluded that inconsistent verdicts, while "intellectually discomforting," must be tolerated to effectuate the societal interest "in securing just and accurate results in the criminal law," *Commonwealth* v. *Cerveny, supra* at 286, there is no sound policy reason why the Commonwealth should be precluded from seeking to enforce the criminal laws against a defendant where, for whatever reason, a codefendant has prevailed on a motion to suppress. See *Standefer* v. *United States, supra* at 25, quoting *United States* v. *Standefer*, 610 F.2d 1076, 1093 (3d Cir. 1979) ("public interest in the accuracy and justice of criminal results is greater than the concern for judicial economy professed in civil cases"). As discussed below, the Commonwealth may choose not to take an interlocutory appeal from an incorrect decision on a motion to suppress. See *infra* at 379-380.

We are cognizant that in a few cases nonmutual collateral estoppel has been used to bar a State from relitigating a suppression decision. See *State* v. *Gonzalez, supra* at 195-196

(State bound by allowance of coindictee's motion to suppress); *People* v. *McGriff, supra* at 152 (prosecution barred from relitigating validity of search warrant when different judge had allowed another defendant's motion to suppress evidence seized pursuant to same warrant); *People* v. *Nieves,* 106 Misc. 2d 395, 405-406 (N.Y. Sup. Ct. 1980) (State collaterally estopped from relitigating constitutionality of search warrant in prosecution of codefendants). Those cases, however, remain the clear minority view, and one we do not embrace.[8] As recently noted by the Supreme Court of Washington, the *Gonzalez* case is "the only remaining, still valid, appellate decision allowing nonmutual collateral estoppel to bar a criminal prosecution." *State* v. *Mullin-Coston,* 152 Wash. 2d 107, 120 (2004) (concluding that doctrine of nonmutual collateral estoppel was not applicable to jury verdicts in criminal cases).

Mutuality of parties in criminal cases is required for another reason: to permit the Commonwealth to decide, depending on the import of each case and the resources available, whether to take an interlocutory appeal from a suppression order. See Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996),[9] and G. L. c. 278, § 28E. A single justice "rarely" refuses to grant a Commonwealth application when its case depends on the evidence that has been suppressed. *Commonwealth* v. *Williams,* 431 Mass. 71, 76 (2000). But a decision by the Commonwealth not to pursue an interlocutory appeal may be based on considerations independent of the merits of any appeal. The Commonwealth may elect to nol pros an indictment rather than appeal from an order suppressing evidence when a charge does

[8]In *State* v. *Gonzalez,* 75 N.J. 181, 195 (1977), the Supreme Court of New Jersey expressed its "misgivings as to the broader implications of extending the collateral estoppel doctrine," *id.* at 194-195, and effectuated its decision by adopting a rule of court mandating joinder of all suppression motions by the codefendants, *id.* at 196, which we are not inclined to follow.

[9]Rule 15 (a) (2) of the Massachusetts Rules of Criminal Procedure, as appearing in 422 Mass. 1501 (1996), provides: "Right of Appeal Where Motion to Suppress Evidence Determined. A defendant or the Commonwealth shall have the right and opportunity to apply to a single justice of the Supreme Judicial Court for leave to appeal an order determining a motion to suppress evidence prior to trial. If the single justice determines that the administration of justice would be facilitated, the justice may grant that leave and may hear the appeal or may report it to the full Supreme Judicial Court or to the Appeals Court."

not justify the cost of appeal.[10] Or, if evidence is suppressed, the Commonwealth may decide to proceed without the evidence rather than seek an appeal. See 6 W.R. LaFave, Search and Seizure § 11.2(g), at 103 & n.313 (4th ed. 2004) (prosecutor may elect not to take appeal from order suppressing evidence if "the objects suppressed are not an important part of the proof"). Here, the codefendant was charged with possession and distribution of cocaine, first offense. The Commonwealth, in its discretion, may have concluded that the charge did not justify the cost of appeal, or may have exercised its discretion not to appeal for other reasons. Abandoning a requirement of mutuality would compel the Commonwealth to pursue an interlocutory appeal from an order suppressing evidence in every case where a codefendant or coindictee did not participate in the suppression hearing. The resulting burden on all parties and the courts is obvious. See 6 W.R. LaFave, Search and Seizure, *supra* at § 11. 2(g), at 103, quoting Restatement (Second) of Judgments § 28 comment i (1980) (if it were necessary "to appeal solely for the purpose of avoiding the application of the rule of issue preclusion, then the rule might be responsible for increasing the burdens of litigation on the parties and the courts rather than lightening those burdens").

Stephens points to our recent decision in *Commonwealth* v. *Cabrera*, 449 Mass. 825, 829 (2007), as supporting his claim that mutuality is not required for an order suppressing evidence to have preclusive effect against the Commonwealth.[11] We held in that case that for collateral estoppel to apply in the context of a suppression decision "(1) the issues in the two proceedings must be identical[12]; (2) the party estopped must have had sufficient incentive to litigate the issue fully and vigorously; (3) *the party*

---

[10]Rule 15 (d) of the Massachusetts Rules of Criminal Procedure, as appearing in 422 Mass. 1501 (1996), requires the Commonwealth to bear the defendant's "costs of appeal together with reasonable attorney's fees."

[11]Both Stephens and the Commonwealth filed supplemental letters in accordance with Mass. R. A. P. 16 (l), 386 Mass. 1247 (1982), arguing that *Commonwealth* v. *Cabrera*, 449 Mass. 825, 829 (2007), supported their respective positions.

[12]To the extent the Commonwealth argues that the constitutionality of the stop and search was not an "issue[]" for collateral estoppel purposes, we reject the argument. The doctrine of collateral estoppel has been applied to the determination of the validity of a motor vehicle stop, *Commonwealth* v. *Ca-*

*estopped* must have been a party to the previous litigation; (4) the applicable law must be identical in both proceedings; and (5) the first proceeding must have resulted in a final judgment on the merits[13] such that the defendant had sufficient incentive and an opportunity to appeal" (emphasis added). *Id.* While a cursory reading of the third *Cabrera* factor may suggest that collateral estoppel could apply in a criminal case where there is nonmutuality of all parties, referencing as it does in the singular that "the party estopped" (here the Commonwealth) must have been a party to the previous litigation for collateral estoppel to apply, in *Commonwealth* v. *Cabrera, supra,* there was in fact mutuality of the parties,[14] and the case did not involve or discuss nonmutual collateral estoppel. *Commonwealth* v. *Cabrera, supra,* does not govern our decision here.

3. *Validity of the stop and search.* In reviewing the denial of a motion to suppress, we accept the motion judge's subsidiary findings of fact absent clear error, and conduct an independent review of the judge's ultimate findings and conclusions of law. See *Commonwealth* v. *Washington,* 449 Mass. 476, 480 (2007). We defer to the motion judge's determination regarding the weight and credibility of the testimony presented at the suppression hearing. See *Commonwealth* v. *Yesilciman,* 406 Mass. 736, 743 (1990).

We first determine at what point the officers' interaction with Stephens "stopped" him, necessitating a finding of either reasonable suspicion or probable cause. We do not agree with Stephens

---

*brera, supra* at 829-830, and whether the officers had reasonable suspicion for the stop in this case was an issue in the suppression hearings in both the District and Superior Courts.

[13]We need not address the argument that collateral estoppel does not apply in this case because the decision on the codefendant's motion to suppress was not a final judgment. We conclude on other grounds that collateral estoppel does not apply against the Commonwealth here.

[14]In *Commonwealth* v. *Cabrera, supra,* the same defendant, who was charged with two different offenses pertaining to a break-in, was collaterally estopped from relitigating, in the proceedings on the second offense, the validity of a motor vehicle stop that had been upheld with respect to the first offense. *Id.* at 831. The defendant had entered a plea of guilty on the first offense after the judge denied his motion to suppress. *Id.* at 826. Years later he was indicted for the second offense. *Id.* We held that the defendant was bound by the denial of his first motion to suppress because the five requirements described above were present. *Id.* at 829-830.

that the officers' "approach" to his vehicle was unlawful and not justified by reasonable suspicion. The officers' approach did not constitute a stop; they were standing outside of the Ford and their vehicles did not block the Ford. See *Commonwealth* v. *Doulette*, 414 Mass. 653, 655 (1993) (trooper's actions in approaching and shining flashlight into parked vehicle during check of commuter rail parking lot known for criminal activity was not stop under Fourth Amendment to United States Constitution). See also *United States* v. *Ortiz-Monroy*, 332 F.3d 525, 528 (8th Cir. 2003) (no stop where officer approached parked car in rest area and knocked on window); *United States* v. *Hendricks*, 319 F.3d 993, 1001 (7th Cir. 2003) (no stop where officer approached vehicle parked at gasoline station). Contrast *Commonwealth* v. *Helme*, 399 Mass. 298, 303 (1987) (police officer conducted stop for Fourth Amendment purposes when he parked cruiser to block defendant's vehicle from leaving bar's parking lot); *Commonwealth* v. *King*, 389 Mass. 233, 241 (1983) (officer intruded on Fourth Amendment rights when his cruiser blocked vehicle parked in rest area). The Fourth Amendment does not require "that the police be aware of specific and articulable facts that an individual is involved in criminal activity in order to look at the individual or the individual's automobile." *Commonwealth* v. *Doulette, supra* at 657.[15]

Rather, we agree with the motion judge that Stephens was

[15]In the Superior Court, Stephens relied on both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. On appeal he makes no specific argument under the Massachusetts Constitution. In any event, in the circumstances of this case, the rights afforded under art. 14 of the Massachusetts Declaration of Rights are coextensive with those of the Fourth Amendment. See *Commonwealth* v. *Leonard*, 422 Mass. 504, 506 n.1, cert. denied, 519 U.S. 877 (1996). In *Commonwealth* v. *Leonard, supra* at 508, this court reversed the allowance of a motion to suppress evidence obtained when a State trooper opened the door of a defendant's vehicle to check on her well-being after activating his cruiser lights and air horn and knocking on the vehicle's window with no response from the defendant. With regard to the trooper's approach to the vehicle, the court stated: "Up until the opening of the automobile door, which is the action in issue here, unlike both [*Commonwealth* v. *Helme*, 399 Mass. 298, 299 (1987), and *Commonwealth* v. *King*, 389 Mass. 233, 241 (1983)], there was no blocking of Leonard's way, no show of force, in short nothing inconsistent with a routine inquiry requiring no justification in a court." *Commonwealth* v. *Leonard, supra.* Similarly here, the officers did not need reasonable suspicion to approach the defendant's parked vehicle. See *Commonwealth* v. *Murdough,*

stopped "at the point where the police officers approached the vehicle *and* opened the doors" (emphasis added). See *Commonwealth* v. *Stoute*, 422 Mass. 782, 786 (1996) (defendant seized for purposes of art. 14 of Massachusetts Declaration of Rights because reasonable person would not have felt free to leave). The motion judge concluded that opening the door of the Ford was justified for two reasons: the officers had reasonable suspicion to believe that their safety was in danger, and based on what they had noted earlier, they had reasonable suspicion to believe that an illegal drug transaction was underway. See *Commonwealth* v. *DePeiza*, 449 Mass. 367, 371 (2007) (officers had reasonable suspicion to stop person walking with arm stiff and straight against body, shifting weight and appearing nervous while talking with officers, and attempting to conceal side of body from them). With regard to the first justification (safety concerns), we agree with the motion judge who concluded that Trooper Doherty reasonably believed that his safety was in danger when he saw a black object in Stephens's hands, which Stephens "quickly lowered." Because the trooper "reasonably believed [the object] could be a weapon," he was justified in "opening the door, securing the defendant's hands and ordering the defendant from the car for a pat frisk limited to finding weapons."[16] See *Commonwealth* v. *Fraser*, 410 Mass. 541, 544-546 & n.4 (1991) (officer with reasonable belief that defendant is "armed and dangerous" may conduct patfrisk to ensure safety if officer has legitimate basis for being in proximity).

Stephens argues that the motion judge's conclusion was erroneous because a stop cannot be justified "on the basis of

428 Mass. 760, 763 (1999) (officers conducting well-being check not required to have justification for initial approach to vehicle parked in public rest area: "it is quite clear that officers may make inquiry of anyone they wish and knock on any door, so long as they do not implicitly or explicitly assert that the person inquired of is not free to ignore their inquiries. . . . [T]hey may also knock on any vehicle window").

[16]We reject the Commonwealth's argument that the trooper was justified in ordering Stephens out of the vehicle based solely on his earlier observations and related expertise about drug trafficking. Although we recognize that suspected drug involvement "certainly may be a relevant factor in assessment of threats to police safety," we have declined "to adopt a blanket rule that all persons suspected of drug activity are to be presumed armed and dangerous for constitutional purposes." *Commonwealth* v. *Washington*, 449 Mass. 476, 483 (2007).

ensuing safety concerns." See R.G. Stearns, Massachusetts Criminal Law: A Prosecutor's Guide 155 (27th ed. 2007) (justification for stop cannot be "bootstrapped from events occurring after an officer has manifested the intention to effect a seizure"). See also *Commonwealth* v. *Wren*, 391 Mass. 705, 708 n.2 (1984) (when officer has no basis for initiating stop, defendant's flight in response to show of authority cannot justify stop). This is not a case, however, where the officers already had conducted a threshold inquiry, and there "was no need for further protective precautions." *Commonwealth* v. *Loughlin*, 385 Mass. 60, 62-63 & n.3 (1982), quoting *Commonwealth* v. *Ferrara*, 376 Mass. 502, 505 (1978) (no justification for exit order issued after occupants of vehicle in breakdown lane complied promptly with officer's request for identification). Trooper Doherty was justified in opening the door of the Ford and taking hold of Stephens's hands in order to ensure his safety. Compare *Commonwealth* v. *Fraser*, *supra* at 544-546 (patfrisk did not violate Fourth Amendment where officer reasonably believed defendant was armed and dangerous even without reasonable suspicion for stop), with *Commonwealth* v. *Knowles*, *ante* 91, 99-108 (2008) (officer responding to report of man swinging baseball bat did not act reasonably in concern for safety when, after seeing defendant throw object into trunk of vehicle and without first asking to speak with defendant, he ordered defendant to stop, step away from vehicle, and approach with hands visible).

With regard to the second justification for the stop (the officers' belief that an illegal drug sale was underway), the motion judge concluded that the "two extremely experienced police officers" had reasonable suspicion to believe that an illegal drug transaction was in progress because they had seen the defendants follow "the precise script of the typical illegal narcotic transaction" in that area of Lawrence: the defendants had done the "expected and routine thing," i.e., had met at a parking lot in an area known for illicit drug dealing and moved to a "more remote location" to complete the illegal transaction. It was a pattern that both officers had witnessed "on numerous occasions" and with which they were "intimately familiar." Stephens counters that

this "innocent activity"[17] was not sufficient to establish reasonable suspicion, and that to conclude otherwise would mean that "any two friends who happen to meet up in a 'high crime' area and proceed together in only one car would be open to scrutiny." But the aggregation of otherwise innocent activities may give rise to reasonable suspicion. See, e.g., *Commonwealth* v. *Watson*, 430 Mass. 725, 728-729 (2000) (officers had reasonable suspicion to stop suspects who entered hotel with no luggage, visited suspected drug dealer's room for short period, emerged with two heavy suitcases, and drove erratically and evasively because "[s]eemingly innocent activities taken together can give rise to reasonable suspicion justifying a threshold inquiry"); *Commonwealth* v. *Sweezey*, 50 Mass. App. Ct. 48, 49 (2000) (reasonable suspicion for stop where officers noted defendant approach other vehicle, talk with driver briefly, receive paper bag, and return to own vehicle).

The troopers' warrantless search of the Ford was also lawful. We agree with the motion judge that the observations made by the officers during the stop "elevated [their] reasonable suspicion to probable cause." "[P]robable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense." *Commonwealth* v. *Santaliz*, 413 Mass. 238, 241 (1992), quoting *Commonwealth* v. *Storey*, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980). Here, in addition to the suspicious activity that justified the stop, Trooper Doherty saw a "considerable amount of money" in Stephens's lap, as well as cut and tied plastic bags that were consistent with the packaging of cocaine. Sergeant Hughes noted the codefendant make a "furtive" movement toward the center console. Both troopers obtained statements from the men, after issuing Miranda warnings, which, in the motion judge's words, "may have added

---

[17]Stephens argues that the evidence merely established that he was parked at a Denny's parking lot; that he did not communicate with the codefendant when the codefendant pulled out of his spot and stopped in front of Stephens's vehicle, nodding to him to follow; and that the vehicles then traveled to another parking lot, before the codefendant entered Stephens's vehicle.

to the probable cause."[18] This was sufficient to constitute probable cause to arrest Stephens for engaging in an illegal drug transaction. See *Commonwealth* v. *Washington*, 449 Mass. 476, 481 (2007) (troopers had probable cause to arrest when having witnessed defendants emerge from restroom with known drug dealer after dealer told undercover officer that he would be meeting with "his guys" in restroom to obtain drugs); *Commonwealth* v. *Hernandez*, 448 Mass. 711, 714-715 (2007) (officer had probable cause to arrest defendant for drug transaction where officer saw defendant pace back and forth, retrieve item from shoe, and hand it to person who approached him in area known for drug sales).

Because Trooper Doherty had probable cause to arrest Stephens, the search of the vehicle was a valid search incident to the arrest.[19] G. L. c. 276, § 1. See *Commonwealth* v. *Alvarado*, 420 Mass. 542, 551 (1995) (search of defendant's pants was lawful where officer had probable cause at time of search to arrest for illegal drug transaction). That Trooper Doherty searched Stephens's vehicle prior to placing him under arrest does not make the search of the vehicle unreasonable. See *Commonwealth* v. *Johnson*, 413 Mass. 598, 602-603 (1992) (search for weapon that preceded arrest valid where officer had probable cause to arrest independent of results of search). The search of the Ford and the arrest of Stephens were "roughly contemporaneous." *Commonwealth* v. *Washington, supra* at 481-482, and cases cited ("[A] suspect need not be formally under arrest at the precise moment of a search incident to an arrest . . . . However, the search and the arrest still must be roughly contemporaneous").[20]

4. *Sufficiency of the evidence.* Stephens argues that the judge

---

[18]As described above, Stephens and the codefendant gave varying explanations for their activities, and neither knew the other's last name.

[19]The motion judge did not explicitly uphold the search under the theory of search incident to arrest, but relied on *Commonwealth* v. *Kennedy*, 426 Mass. 703, 708-709 (1998) (officer had probable cause to arrest and search defendant after seeing quick exchange with known drug dealer in high crime area). We may affirm the denial of a motion to suppress on any ground supported by the record. See *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 102 (1997). The Commonwealth offers an additional theory to justify the search: it was "a protective search that was part of the threshold inquiry." We need not address this argument because we conclude the search was valid on other grounds.

[20]Stephens also moved to suppress the statements he made to the troopers,

improperly denied his motions for a required finding of not guilty[21] because the evidence did not establish that he was the seller, as opposed to the buyer, in the transaction.[22] Viewed in its light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), we conclude that the evidence was sufficient to permit the jury to find Stephens guilty of unlawful distribution of cocaine. See *Commonwealth* v. *Clark*, 446 Mass. 620, 623-624 (2006) (evidence supported inference that defendant was drug seller rather than buyer where police had seen exchange in which defendant received cash from other man and defendant had only money and keys when stopped). The evidence need not require the jury to draw the inference of guilt; it is sufficient that the evidence permitted the inference that the jury obviously drew. See *Commonwealth* v. *Latimore, supra* at 678-679. Here, the jury reasonably could have inferred that it was Stephens who unlawfully distributed the cocaine. The officers found, in his lap, clear plastic bags with the tops knotted and corners cut off, with additional altered plastic bags in his pocket. An expert witness for the Commonwealth testified that dealers package cocaine in plastic bags by cutting off the corners.[23] The officers testified that from their experience they were familiar with the modus operandi of the purchase of illegal drugs, conduct that mirrored the conduct here: the codefendant arrived at the restaurant parking lot first, both vehicles moved to a second location, and the codefendant entered Stephens's vehicle to complete the drug transaction. The jury heard expert testimony that, where police have used undercover agents to purchase illicit drugs, a dealer is "[v]ery seldom" the first to arrive at the agreed location and "[v]ery seldom" enters the vehicle of the would-be purchaser (the undercover agent).

---

arguing that they were obtained in violation of his Federal and Massachusetts constitutional rights. The motion judge denied the motion as to the statements, concluding that "[a]ll the evidence indicates that the statements provided were completely voluntary." Stephens has not raised the issue on appeal.

[21]Stephens moved for a required finding of not guilty at the close of the Commonwealth's case and at the conclusion of all the evidence. See Mass. R. Crim. P. 25, as amended, 420 Mass. 1502 (1995).

[22]Stephens does not concede that the evidence is sufficient to establish that a drug transaction had taken place.

[23]Stephens does not challenge that the expert evidence was properly admitted.

Furthermore, the officers found $345 in Stephens's lap. On the passenger side of the console, toward which the codefendant had made a "furtive" movement when he saw the trooper, they found three bags containing cocaine (two "eight balls" and a "forty" bag). The Commonwealth's expert testified that the approximate cost of two "eight balls" and a "forty" bag of cocaine in May, 2003, was $340. All of this evidence permitted the jury reasonably to draw an inference that Stephens was the seller; his motions for a required finding of not guilty were properly denied. See *Commonwealth* v. *Wilson*, 441 Mass. 390, 400-402 (2004) (evidence sufficient to show intent to distribute narcotics where defendant possessed several "dime" bags of marijuana, almost $500 in cash, pager, and cellular telephone, and expert testified that facts consistent with intent to distribute).

We affirm the judge's denial of the motion to suppress. The judgment of conviction is affirmed.

*So ordered.*