# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2123

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Northern District of Iowa. |
| | * | |
| Richard Samuel Ayala, | * | [PUBLISHED] |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: April 16, 2010
Filed: July 8, 2010

_____

Before LOKEN, BRIGHT, and MELLOY, Circuit Judges.

_____

PER CURIAM.

Appellant Richard Ayala pleaded guilty to one count of possession of stolen firearms in violation of 18 U.S.C. §§ 922(j) and 924(a)(2), and two counts of being a domestic abuser in possession of firearms in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2). The sentencing court[1] imposed a 97-month term of incarceration (8 years 1 month). Ayala appeals his sentence, raising four grounds for relief. We affirm.

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Judge for the Northern District of Iowa.

Ayala first argues that the sentencing court erred in imposing an enhancement under U.S.S.G. § 2K2.1(b)(6). But this argument fails under *United States v. Hedger*, 354 F.3d 792, 794-95 (8th Cir. 2004), where this court held that the defendant's firearm possession offense was a different type of crime from the theft offense.

Ayala next argues that the court erred in enhancing his offense level under U.S.S.G. § 2K2.1(b)(1)(A). We review a court's application of section 2K2.1 for clear error and conclude that Ayala has not shown the sentencing court clearly erred in finding that he possessed between three and five firearms. *See United States v. Miller*, 560 F.3d 751, 753 (8th Cir. 2009).

Ayala also contends the sentencing court erred in denying his request for a downward variance under 18 U.S.C. § 3553(a). But we are satisfied that the court considered the parties' arguments and had a reasoned basis for its sentence. *See United States v. Starfield*, 563 F.3d 673, 675 (8th Cir. 2009) (citing *Rita v. United States*, 551 U.S. 338, 356 (2007)).

Finally, Ayala challenges the sentencing court's denial of a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). "Whether the defendant accepted responsibility is a factual question that depends largely on credibility assessments made by the sentencing court. This Court gives great deference to the district court's denial of a request for a reduction for acceptance of responsibility and reviews the decision for clear error." *United States v. Long Soldier*, 431 F.3d 1120, 1122-23 (8th Cir. 2005) (citation omitted). A defendant bears the burden of establishing entitlement to a reduction for acceptance of responsibility. *Peters v. United States*, 464 F.3d 811, 812 (8th Cir. 2006). Here, the probation office recommended that Ayala receive the reduction, but the government opposed the reduction. The sentencing court acknowledged that Ayala pleaded guilty, which favored applying the reduction, but the court found that Ayala "shade[d]" the truth with respect to the theft and quantity of firearms, and minimized his role in the

offense. Although some judges may have granted the reduction and others may have denied the reduction,[2] in these circumstances, the district court did not clearly err by refusing to apply a reduction for acceptance of responsibility.

The judgment of the district court is affirmed.

BRIGHT, Circuit Judge, concurring.

I concur but write separately because, in my view, most judges would have granted Ayala a reduction for acceptance of responsibility. Such a disparity and the issue of sentencing disparity generally is of concern to federal judges. Disparity before the guidelines and now results from a familiar problem:[3]

> Under any system of law, unless there is but one mandatory penalty, the sentence of an offender will depend partly on the identity of the sentencing judge. Under American law, the trial judge's views and values can play a particularly important role. . . . Since the legal sentencing frames are normally broad, especially for the more serious crimes, similar offenders who commit similar offenses under similar circumstances may receive substantially different sentences.

---

[2]The government cites *Long Soldier*, 431 F.3d at 1122; *United States v. Yell*, 18 F.3d 581 (8th Cir. 1994); *United States v. Erhart*, 415 F.3d 965 (8th Cir. 2005); *United States v. Little Hawk*, 449 F.3d 837 (8th Cir. 2006); *United States v. Skorniak*, 59 F.3d 750 (8th Cir. 1995); *United States v. Ortiz-Monroy*, 332 F.3d 525 (8th Cir. 2003); and *United States v. Ngo*, 132 F.3d 1231 (8th Cir. 1997).

[3]The problem of sentencing disparity is nothing new. *See* Judge Irving R. Kaufman*, Sentencing: The Judge's Problem*, The Atlantic Monthly, January 1960, available at http://www.theatlantic.com/past/docs/unbound/flashbks/death/kaufman.htm (last visited June 8, 2010) (noting that in 1957 the average sentence for auto theft in one federal court was thirty-six months while in another the average was less than one year).

Shari Seidman Diamond and Hans Zeisel, *Sentencing Councils: A Study of Sentence Disparity and its Reduction*, 43 U. Chi. L. Rev. 109, 110 (1975).

Sentencing discretion should not become the justification for federal courts' acceptance of disparity between similarly situated defendants. Disparity erodes public confidence in the fair administration of our criminal justice system. As described many years ago by Justice Jackson when he served as the Attorney General of the United States, "[i]t is obviously repugnant to one's sense of justice that the judgment meted out to an offender should depend in large part on a purely fortuitous circumstance; namely the personality of the particular judge before whom the case happens to come for disposition." *Id.* at 111 (citing 1940 Att'y Gen. Ann. Rep. 5-6).[4]

If we can agree with Justice Jackson that disparity based on the identity of the sentencing judge has pernicious effects, how, in this age of discretion, can the federal judiciary address sentencing disparity? I suggest that federal sentencing judges, particularly those in multi-judge districts, examine and institute sentencing councils similar to those that existed before the guidelines.

---

[4]United States Senator Jim Webb of Virgina has proposed creating a blue ribbon commission of respected criminal justice experts to examine the serious problems present in our criminal justice system. *See* National Criminal Justice Commission Act of 2010, S. 714, 111th Congress § 2 (2010). These problems include our nation's high incarceration rate of nonviolent offenders and the waste of public resources incarcerating minor law breakers. *See* Editorial, *They Don't Agree Often*, N.Y. Times, May 10, 2010 at A20 (noting that Senator Webb's bill has attracted the support of the Fraternal Order of Police, the International Association of Chiefs of Police, and the American Civil Liberties Union). Senator Webb's initiative is sorely needed as a forerunner to legislative changes in the federal criminal justice system. Further, we federal judges have an independent responsibility to the public to address the inequalities present in our criminal justice system.

"The council enables the sentencing judge, before imposing sentence, to meet with his [or her] colleagues in order to learn what sentences they would impose if they were the sentencing judge." *Id.* at 109. For example, in the Eastern District of New York, every case was considered by a panel of three judges: the sentencing judge and two colleagues. *Id.* at 117-18. The New York council met weekly. *Id.* at 117. Before each meeting, the participating judges received a copy of the presentence report for each offender and recorded their sentence recommendation. *Id.* The cases and recommendations were discussed at the next council meeting. *Id.* The views of the council were advisory, with the sentencing judge retaining complete discretion in making the final decision. *Id.* Nonetheless, Diamond and Zeisel report that New York sentencing judges changed their sentences based on input from their colleagues in about one-third of the cases brought before the council. *Id.* at 125. Although sentencing councils did not eliminate sentencing disparity, they did reduce disparity. *Id.* at 144. Importantly, councils provided a means for sentencing judges to receive valuable feedback on the type of sentence being contemplated.

Although needing substantial revision, the advisory guidelines may be helpful in reducing improper disparity. However, a guideline sentence often may not be appropriate and a judge should consider and analyze the statutory factors, *see* 18 U.S.C. § 3553(a), to arrive at a fair and reasonable result. Sentencing councils would assist federal judges in fashioning sentences in accordance with section 3553(a) and alert judges to situations where their personal viewpoints may result in a disparate sentence.

Moreover, because of our nation's technological advances, today's councils could include the viewpoints of judges from various geographical areas. The recommendations of councils might be shared easily among the federal judiciary.

The judiciary's work is not finished so long as sentencing in federal courts is affected by the fortuitous *vel non* circumstances described by Justice Jackson. Judges

in the federal district courts as well as federal appellate judges need to address and reduce disparity in sentencing similar criminal offenders. Otherwise, a sentence may largely reflect the ideology or viewpoint of the sentencing judge rather than the nature of the crime and history and characteristics of the offender.

_____