FILED

May 30 2017, 10:12 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Anthony C. Lawrence
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

## I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Deshawn Lamont Redfield, *Appellant-Defendant,* | May 30, 2017 |
| | Court of Appeals Case No. 48A02-1608-CR-1806 |
| v. | Appeal from the Madison Circuit Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Angela Warner Sims, Judge |
| | Trial Court Cause No. 48C01-1406-FB-1086 |

**Najam, Judge.**

## Statement of the Case

[1] Deshawn Lamont Redfield appeals his convictions for unlawful possession of a firearm by a serious violent felon, as a Class B felony; possession of cocaine, as a Class C felony; pointing a firearm, as a Class D felony; and resisting law

enforcement, as a Class A misdemeanor. Redfield raises one issue for our review, namely, whether an officer violated Redfield's right to be free from unreasonable search and seizure under the Fourth Amendment to the United States Constitution[1] when the officer seized Redfield for officer safety but without pre-existing reasonable suspicion of criminal activity. We hold that, on these facts, the officer's seizure of Redfield was reasonable. Thus, we affirm the trial court's judgment.

## Facts and Procedural History

[2] In the early morning hours of June 15, 2014, Anderson Police Department ("APD") Officer Gabe Bailey responded to a dispatch report of a subject with a firearm at the Birdhouse bar. The report, which was based on an anonymous tip,[2] described the subject as a black male wearing a gray shirt and a hat. In the few moments it took for dispatch to describe the suspect, Officer Bailey had already arrived at the Birdhouse, and he immediately observed a person who matched that description outside the bar. Officer Bailey radioed for backup.

[3] While awaiting backup, Officer Bailey approached the man, Redfield, who was talking to another man, Eric Welker. Officer Bailey attempted to "stall" while

---

[1] As explained further below, Redfield did not preserve for appellate review an independent analysis under Article 1, Section 11 of the Indiana Constitution.

[2] After APD officers arrested Redfield, Officer Bailey took a statement from Richard Dawson, who had seen Redfield in the Birdhouse pointing a gun at others because Redfield was "upset [that] people were buying drinks and he didn't get a drink bought for him." Tr. Vol. I at 24. But there is no evidence that Dawson made the initial report to the APD or that Officer Bailey knew of the facts that were relayed to him by Dawson when Officer Bailey initially confronted Redfield. *See id.* at 25.

backup arrived and "made contact with" Welker, "patted him down," and "spoke to him briefly." Tr. Vol. II at 48. Officer Bailey stated that APD had received a call about "somebody with a gun." *Id.* At that point, Redfield "took a step" away from Officer Bailey and "blade[d] his body away" from Officer Bailey's line-of-sight "several times." *Id.* at 48, 51. That is, Redfield moved the right side of his body away from Officer Bailey's vantage point while he walked away from Officer Bailey. Further, and while only about five feet from Officer Bailey, Redfield made a "drawing motion" with his right hand as if he were "drawing for a gun." *Id.* at 49. Officer Bailey thought he "was go[ing to] be in a gun fight" and immediately drew his sidearm and ordered Redfield to "Stop!" and "Let me see your hands!" *Id.*

[4] Redfield disregarded Officer Bailey's commands and continued to walk away. After Redfield had gone about fifty feet and continued to disregard Officer Bailey's commands, Officer Bailey tased Redfield, which knocked Redfield down. Officer Bailey again ordered Redfield to put his hands out, and Redfield initially complied. But he then made a quick motion with his right hand and grabbed a firearm "[o]ut of the side of his pants." *Id.* at 59. Officer Bailey fired the taser again, and, while Redfield was momentarily incapacitated by the taser, Officer Bailey was able to acquire Redfield's firearm.

[5] Thereafter, backup arrived and Redfield was arrested. His firearm was found to have been loaded with one hollow-point bullet along with regular ammunition. Officer Bailey also discovered crack cocaine on Redfield's person.

[6] The State charged Redfield with unlawful possession of a firearm by a serious violent felon, as a Class B felony; possession of cocaine, as a Class C felony; pointing a firearm, as a Class D felony; and resisting law enforcement, as a Class A misdemeanor. Redfield filed a motion to suppress the evidence on the grounds that he had been unlawfully seized by Officer Bailey and, as such, the evidence obtained pursuant to that seizure was obtained in violation of the Fourth Amendment to the United States Constitution and, for the same reasons, Article 1, Section 11 of the Indiana Constitution. The trial court denied Redfield's motion to suppress after a hearing. At his ensuing jury trial, Redfield renewed his Fourth Amendment and Article 1, Section 11 objections to the State's evidence, and the court overruled his objections. The jury found Redfield guilty as charged, and the court entered its judgment and sentence against Redfield accordingly. This appeal ensued.

## Discussion and Decision

[7] Redfield's arguments that "police violated his Fourth Amendment and Article 1, Section 11 rights" raise "questions of law we review *de novo*." *Zanders v. State*, ___ N.E.3d ___, No. 15S01-1611-CR-571, slip op. at 4-5 (Ind. May 4, 2017). As the United States Supreme Court has explained with respect to the Fourth Amendment, "as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal," while "findings of historical fact" underlying those legal determinations are reviewed "only for clear error." *Ornelas v. United States*, 517 U.S. 690, 699 (1996). The Indiana Supreme Court applies the same standard under Article 1, Section 11.

*E.g.*, *McIlquham v. State*, 10 N.E.3d 506, 511 (Ind. 2014). In other words, we review whether reasonable suspicion or probable cause exists "under a standard 'similar to other sufficiency issues'—whether, without reweighing the evidence, there is 'substantial evidence of probative value that supports the trial court's decision.'" *Id.* (quoting *State v. Richardson*, 927 N.E.2d 379, 385 (Ind. 2010)). With that standard in mind,[3] we turn to Redfield's arguments on appeal.

[8] Redfield first challenges the legality of his seizure under the Fourth Amendment. The crux of Redfield's argument on this issue is that Officer Bailey had no reasonable suspicion that Redfield was engaged in criminal activity when Officer Bailey first encountered Redfield outside of the Birdhouse.[4] As such, Redfield continues, Officer Bailey had no legal grounds subsequently to seize Redfield.

[9] The Indiana Supreme Court recently held that a report of possession of a firearm, without more, is not sufficient to establish reasonable suspicion of

---

[3] In his brief, Redfield describes this appeal as an appeal from the denial of his motion to suppress. Appellant's Br. at 6. That is not correct; the evidence was presented to a jury, and Redfield objected to the admission of the evidence at trial. Thus, he is appealing from that admission, not from the prior denial of his motion to suppress. *See Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). However, in light of that fact, the State asserts that our standard of review is for an abuse of discretion, as that is our typical standard of review for challenges to the admission of evidence. *See Brown v. State*, 770 N.E.2d 275, 280 (Ind. 2002). But the issues in this appeal are constitutional questions and, as such, we review them *de novo*. *See, e.g.*, *Guilmette*, 14 N.E.3d at 40. And given the correct standard of review and Redfield's arguments on appeal, his mistaken characterization of this appeal as an appeal from the denial of his motion to suppress is irrelevant to our analysis. *See id.* at 40 n.1.

[4] The parties also dispute the merits of Officer Bailey's reliance on an anonymous tip. We assume for the sake of argument that the anonymous tip did not establish reasonable suspicion. Generally the "[r]eliability of the . . . anonymous tipster . . . must be established by reference to underlying facts and circumstances which indicate that the information is trustworthy." *State v. Renzulli*, 958 N.E.2d 1143, 1147 (Ind. 2011).

criminal activity. *Pinner v. State*, ___ N.E.3d ___, No. 49S02-1611-CR-610, slip op. at 5-10 (Ind. May 9, 2017). In *Pinner*, police received a report of a man with a firearm at a theater. The report described no criminal or suspicious behavior from the man. Nonetheless, upon arriving at the theater and identifying a person, Pinner, who matched the description provided, an officer searched Pinner for weapons and discovered a firearm. The State subsequently charged Pinner with unlawful possession of a firearm.

[10] On interlocutory appeal from the trial court's denial of Pinner's motion to suppress, the Indiana Supreme Court held that the State violated Pinner's Fourth Amendment rights when the officer searched his person at the theater. *Id.* The court concluded that there was "no evidence in the record from which an inference of *criminal* activity can be drawn" because the officer had no reason to suspect that Pinner's possession of a firearm was contrary to Indiana law. *Id.*, slip op. at 8. The court also noted that, "[a]lthough nervous, Pinner made no furtive or suspicious movements, nor did he reach for the weapon; and he made no attempt to flee." *Id.*, slip op. at 4, 8-10. As such, there was no evidence from the encounter itself that gave the officer cause to search Pinner for weapons.

[11] Our facts are materially different from those in *Pinner* on the latter point. That is, while we agree with Redfield that Officer Bailey had no reasonable suspicion of criminal activity at the time he initially approached, that fact does not negate the reasonableness of Officer Bailey's ensuing conduct in response to Redfield's behavior during the encounter. It is settled law that, if an officer has

commenced "a nonseizure confrontation without a pre-existing reasonable suspicion supporting a frisk, but such suspicion suddenly appears (most likely because of the suspect's conduct), then the officer is entitled to frisk for his own protection."[5]  4 Wayne R. LaFave Search & Seizure § 9.6(a) (5th ed. 2012).

[12]  That is what the facts here demonstrate.  Officer Bailey responded to an anonymous report of a person with a firearm.  Officer Bailey then immediately observed a person matching the suspect's description engaged with another man.  Officer Bailey approached and patted down the other man, noting that APD had received a report of a person with a firearm.  Redfield then became nervous, "blade[d]" his body away from Officer Bailey, and made a hand motion consistent with drawing a firearm.  Tr. Vol. II at 48-49.  It was at that moment that Officer Bailey, whose immediate thought was that he was about to become engaged "in a gun fight," *id.* at 49, seized Redfield[6] by drawing his own sidearm and ordering Redfield to "Stop!" and show his hands.  *Id.*

[13]  Officer Bailey's initial encounter with Redfield was not a seizure.  It became a seizure only after Redfield's own conduct reasonably and suddenly gave rise to a fear for officer safety.  Thus, Officer Bailey's seizure of Redfield was lawful

---

[5]  Redfield asserts that "we have held that the defendant's actions of turning away from a police officer and putting something down his pants was not sufficient conduct to justify an investigatory stop."  Appellant's Br. at 17.  But neither of the cases Redfield cites in support of that assertion, *Bridgewater v. State*, 793 N.E.2d 1097, 1100-02 (Ind. Ct. App. 2003), *trans. denied*, and *Webb v. State*, 714 N.E.2d 787, 789 (Ind. Ct. App. 1999), involves an analysis of a nonseizure confrontation in which the facts then escalate to justify, or not, a frisk for officer protection.

[6]  We reject Redfield's argument on appeal that the moment of seizure only happened later when Officer Bailey first tased Redfield.

under the Fourth Amendment. LaFave, *supra*, at § 9.6(a); *see also, e.g.*, *United States v. Ellis*, 501 F.3d 958, 961-62 (8th Cir. 2007) (holding that an officer did not violate the Fourth Amendment when, during the course of a consensual encounter, the officer searched the defendant after the officer had asked him if he was armed and the defendant then "act[ed] nervously and reach[ed] toward his pocket"); *Commonwealth v. Stephens*, 885 N.E.2d 785, 796-97 (Mass. 2008) (holding that an officer did not violate the Fourth Amendment when, during a nonseizure encounter, he searched the defendant for weapons after the officer had observed the defendant holding "a black object" in his hands, which he "quickly lowered" to the area of his lap).

[14] Accordingly, Redfield's decision to disregard Officer Bailey's lawful command and attempt to flee was itself not lawful. Ind. Code § 35-44.1-3-1(a)(3) (2013). Once Redfield attempted to flee from Officer Bailey's lawful command, Officer Bailey had probable cause to further seize and arrest Redfield. He did so and, in turn, lawfully discovered and seized the evidence now in question. We thus affirm the trial court's judgment on the Fourth Amendment issue.

[15] Finally, Redfield asserts on appeal that the seizure of his person violated his rights under Article 1, Section 11 of the Indiana Constitution. However, in his arguments to the trial court, Redfield mentioned Article 1, Section 11 but did not provide any independent analysis under that provision of the law and facts. Rather, Redfield's arguments below were that his state rights were violated only for the same reasons his federal rights were violated. Accordingly, we conclude that Redfield has not preserved for appellate review any independent claim

under Article 1, Section 11. *See Wilkins v. State*, 946 N.E.2d 1144, 1147 (Ind. 2011) ("Because he provides no authority or independent analysis supporting a separate standard under the state constitution, any state constitutional claim is waived."). Insofar as Redfield may have preserved a claim under Article 1, Section 11 for our review, for the same reasons his federal rights were not violated, neither were his rights under Article 1, Section 11, and we affirm the trial court on this issue as well.

[16] Affirmed.

Bailey, J., and May, J., concur.