## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 09 2018, 6:09 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy E. Stucky
Stucky, Lauer & Young, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Darius Lea,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

October 9, 2018

Court of Appeals Case No.
18A-CR-1004

Appeal from the Allen Superior Court

The Honorable John F. Surbeck, Jr., Judge

The Honorable David M. Zent, Magistrate

Trial Court Cause No.
02D06-1710-CM-4318

**Sharpnack, Senior Judge.**

## Statement of the Case

[1] Darius Lea appeals his conviction of possession of a handgun without a license, a Class A misdemeanor.[1] We affirm.

## Issue

[2] Lea raises one issue, which we restate as: whether the trial court erred in admitting evidence obtained by police officers through an investigatory stop and pat down.

## Facts and Procedural History

[3] At 1:10 a.m. on September 27, 2017, Officers Robert Geiger and Daniel Chiu of the Fort Wayne Police Department were dispatched to a neighborhood to investigate a report of men "with hooded sweatshirts on, backpacks, looking into vehicles, presumed to be possibly breaking into vehicles." Trial Tr. p. 7. The officers drove through the area, looking for persons that matched the description. By 2 a.m., the officers were in a different part of their patrol area and saw two men walking in the street, even though there was a sidewalk nearby. The men wore hooded sweatshirts and one of them carried a backpack. Officer Geiger activated his car's emergency lights and stopped his car.

[4] Officer Chiu got out of the car and called to the two men, telling them to come closer. The two men complied. Officer Geiger then got out of the car to talk

---

[1] Ind. Code § 35-47-2-1 (2017).

with one of the men, later identified as Lea, while Officer Chiu spoke with Lea's companion. Geiger noted the following:

> While I was speaking with Mr. Lea, he would not direct his body towards me and he was standing in a bladed stance with his right side angled away from me. Never during the encounter when I speaking [sic] with him did he squarely, square his body up to me as we were engaging in conversation. He avoided eye contact. He kept making nervous mannerisms with his hands as if he didn't know what to do with them. You know, pulling them up and down, I also noticed he touched around his pocket area multiple times with his hands.

*Id.* at 23.

[5] In Officer Geiger's experience, a person in a "bladed stance" could be preparing to "attack" or could be trying to hide contraband. *Id.* at 24, 52-53. Further, based on his training, Geiger knew that when a person avoided eye contact with an officer he was nervous and possibly considering ways "to flee." *Id.* at 47. Lea did not have any identification. Geiger learned from his brief questioning that Lea claimed to be going to his mother's home but did not know her house number. In addition, Lea kept attempting to interfere with Officer Chiu's questioning of his companion, trying "to control both conversations." *Id.*

[6] Officer Geiger became concerned for his safety based on Lea's behavior "and the fact that he kept trying to control the entire conversation[ ]." *Id.* Geiger decided to conduct a pat down of Lea for weapons. He first asked Lea if Lea had any weapons, and Lea indicated he did not.

[7]     Next, Officer Geiger ordered Lea to turn around, raise his arms, and spread his feet.  He complied, and Geiger patted down Lea starting at his head and moving down.  Geiger felt objects in each of Lea's front pants pockets.  He recognized the item in the left pocket as a cell phone, but he could not immediately identify the object in Lea's right front pocket.  Geiger asked Lea what was in his right pocket, and he replied that it was a cell phone.  Geiger "could clearly tell it was not a flat cell phone." *Id.* at 26.  At that point, he recognized it as the grip of a handgun and removed it from Lea's pocket.

[8]     Lea did not have a license to carry the gun.  Officer Geiger handcuffed him and put him in his car.  Lea then admitted to Geiger that the gun belonged to him.  In total, two minutes elapsed from the time Geiger activated his emergency lights to the discovery of the gun.

[9]     The State charged Lea with possession of a handgun without a license, a Class A misdemeanor.  Lea filed a motion to suppress evidence obtained from the stop and the pat down.  The trial court held a hearing and denied the motion.  Lea filed a second motion to suppress on the day of his bench trial.  The court denied the second motion and proceeded with the trial, during which Lea objected to the admission of evidence obtained from the stop and the pat down.  The court overruled the objection and, at the end of the trial, determined Lea was guilty.  The court imposed a sentence, and this appeal followed.

# Discussion and Decision

[10] Lea argues the officers violated his federal and state constitutional protections against unreasonable search and seizure by detaining him and patting him down. He claims the court should not have admitted any evidence discovered during the stop.

[11] In general, decisions to admit or exclude are matters for the trial court's discretion. *Price v. State*, 765 N.E.2d 1245, 1248 (Ind. 2002). Where, as here, an appellant's challenge to the admissibility of evidence is premised on a challenge to the constitutionality of a search or seizure, we review the issue de novo because it raises a question of law. *Guilmette v. State*, 14 N.E.3d 38, 40-41 (Ind. 2014).

## I. Fourth Amendment

[12] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[13] "The U.S. Supreme Court has declared that the Fourth Amendment's 'protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest.'" *Armfield v. State*, 918 N.E.2d 316, 319 (Ind. 2009) (quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750, 151 L.

Ed. 2d 740 (2002)). The police can "stop and briefly detain a person for investigative purposes" without probable cause "if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *U.S. v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884-85, 20 L. Ed. 2d 889 (1968)). An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. *U.S. v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621 (1981).

[14] Pursuant to Indiana Code section 34-28-5-3 (2014):

> (a) Whenever a law enforcement officer believes in good faith that a person has committed an infraction or ordinance violation, the law enforcement officer may detain that person for a time sufficient to:
>
> (1) inform the person of the allegation;
>
> (2) obtain the person's:
>
> (A) name, address, and date of birth; or
>
> (B) driver's license, if in the person's possession; and
>
> (3) allow the person to execute a notice to appear.

[15] Officer Geiger saw Lea and his companion walking on the street even though accessible, unobstructed sidewalks were nearby. "If a sidewalk is provided and

the sidewalk's use is practicable, a pedestrian may not walk along and upon an adjacent roadway." Ind. Code § 9-21-17-12 (1991). A violation of Indiana Code section 9-21-17-12 is a Class C infraction. Ind. Code § 9-21-17-24 (1991). Lea's commission of an infraction provided reasonable suspicion for Officer Geiger to conduct an investigatory stop.

[16] Lea cites *Stalling v. State*, 713 N.E.2d 922 (Ind. Ct. App. 1999), in support of his argument that the officers lacked reasonable suspicion to detain him, but that case is factually dissimilar. In *Stalling*, a panel of this court determined officers lacked reasonable suspicion for an investigatory stop because Stalling merely turned and walked away from officers in a high crime neighborhood. *Id.* at 924. The officers were aware that Stalling had previously engaged in criminal activity, but knowledge of his past conduct was insufficient to establish reasonable suspicion on the night in question. *Id.* By contrast, in the current case Officer Geiger saw Lea commit an infraction.

[17] Lea further claims Officer Geiger had no reason to conduct a pat down of his clothing, claiming he fully cooperated with the officers' requests. The Fourth Amendment allows privacy interests protected by the Amendment to be balanced against the interests of officer safety. *Wilson v. State*, 745 N.E.2d 789, 792 (Ind. 2001). For pat downs for weapons, the key is whether a reasonably prudent person in the officer's circumstances would be warranted in the belief that his or her safety, or the safety of others, was in danger. *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883. In determining the reasonableness of the officer's conduct, "due weight must be given, not to his inchoate and unparticularized

suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.* at 27, 88 S. Ct. at 1883.

[18] When Officer Geiger questioned Lea, Lea would not make eye contact with him and kept moving his hands toward his pockets. Further, he did not face Geiger directly, choosing instead to stand at an angle in a manner that indicated an imminent attack or an attempt to hide something. Lea indicated he was going to his mother's house, but he did not know her house number. He also kept interfering in his companion's conversation with Officer Chiu, trying to control both conversations. In Geiger's experience, failure to make eye contact was a "red flag." Trial Tr. p. 47. Based on these specific facts and Geiger's experience, it was reasonable for him to be concerned for his safety and pat Lea down for weapons. *See Redfield v. State*, 78 N.E.3d 1104, 1108 (Ind. Ct. App. 2017) (seizure of suspect justified by officer's reasonable fear for his own safety; suspect was nervous, stood in a "blade[d]" stance hiding one side of his body from the officer, and made hand gestures consistent with drawing a gun), *trans. denied*.

[19] Lea argues the investigatory stop and pat down were improper because the officers extended the duration of the stop beyond the time necessary to investigate the infraction. "A police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. State*, __ U.S. __, 135 S. Ct. 1609, 1612, 191 L. Ed. 2d 492 (2015). Indiana Code section 34-28-5-3 provides that

an officer may detain a person for a time sufficient to inform the person of the alleged infraction and obtain the person's personal information, including name, address, date of birth, and identification, if any.

[20] Officer Geiger quickly noticed Lea's failure to make eye contact, his repeated movement of his hands toward his pockets, his "bladed stance," and his nervousness and attempts to control Officer Chiu's conversation with Lea's companion. Based on Geiger's observations, the questioning quickly segued into the pat down. Less than two minutes passed from the officers' activation of their emergency lights to Geiger's discovery of the handgun. We conclude the officers did not extend the stop beyond the duration necessary to investigate the infraction. Lea has failed to demonstrate a Fourth Amendment violation.

## II. Article I, Section 11

[21] Article I, section 11 of the Indiana Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[22] Although its text mirrors the Fourth Amendment, Indiana courts interpret section 11 separately and independently. *Robinson v. State*, 5 N.E.3d 362, 368 (Ind. 2014). The validity of a search under the Indiana Constitution "turns on an evaluation of the reasonableness of the police conduct under the 'totality of

the circumstances.'" *Garcia v. State*, 47 N.E.3d 1196, 1199 (Ind. 2016), *emphasis omitted* (quoting *Litchfield v. State*, 824 N.E.2d 356, 360 (Ind. 2005)). In determining whether a search was reasonable, we balance: 1) the degree of concern, suspicion, or knowledge that a violation has occurred; 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and 3) the extent of law enforcement needs. *Litchfield*, 824 N.E.2d at 361.

[23] The officers had a high degree of knowledge that Lea had committed a violation because they saw him walking in the street, which is an infraction. Further, the degree of intrusion was modest: the officers turned their emergency lights on and told the men to approach them, and then briefly conversed with them before Geiger conducted a pat down over Lea's clothes. Finally, the law enforcement need for the pat down was substantial because Geiger's observations of Lea would have caused a reasonable person to feel concerned for his or her safety. For these reasons, we conclude the investigatory stop and pat down were reasonable and did not violate section 11. *See Bell v. State*, 81 N.E.3d 233, 238-39 (Ind. Ct. App. 2017) (pat down did not violate section 11; Bell kept looking around rather than at the officer, was sweating, and had a suspicious bulge in his pocket that he refused to discuss), *trans. denied*. The trial court did not err in admitting evidence obtained during the investigatory stop and pat down.

# Conclusion

[24] For the reasons stated above, we affirm the judgment of the trial court.

[25] Affirmed.

Najam, J., and Bradford, J., concur.