## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 19 2018, 8:27 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Desmond R. Brown,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 19, 2018

Court of Appeals Case No.
18A-CR-1361

Appeal from the Tippecanoe Superior Court

The Honorable Steven P. Meyer, Judge

Trial Court Cause No.
79D02-1706-F3-12

**Najam, Judge.**

# Statement of the Case

Desmond Brown appeals his convictions following a jury trial for two counts of possession of a narcotic drug, one as a Level 4 felony and one as a Level 5 felony; possession of methamphetamine, as a Level 5 felony; two counts of resisting law enforcement, one as a Level 6 felony and one as a Class A misdemeanor; carrying a handgun without a license, as a Class A misdemeanor; and possession of marijuana, as a Class B misdemeanor. Brown presents the following issues for our review:

1.  Whether the trial court erred under the Fourth Amendment to the United States Constitution when it admitted evidence that law enforcement had seized after a traffic stop.

2.  Whether two of his convictions violate the prohibition against double jeopardy.

3.  Whether his sentence is inappropriate in light of the nature of the offenses and his character.

We affirm in part, reverse in part, and remand with instructions.

# Facts and Procedural History

On June 19, 2017, Lafayette Police Department Officer Grant Leroux was on patrol near the Red Roof Inn, which was known to Officer Leroux as a location of frequent drug activity and prostitution. At approximately 11:00 p.m., Officer Leroux saw a man, later identified as Monty Pride, get into the driver's seat of a red Nissan Altima that was parked outside of the hotel and running. Brown

was riding as a front seat passenger in the car. Officer Leroux followed the Altima a short distance, but he was not able to keep up with it. Officer Leroux then notified other officers in the area to watch for the Altima, and Officers Shawn Verma and Joshua Ricks, who were in one patrol car together, saw it and followed it on Columbia Street. The officers saw Pride commit a traffic infraction, namely, impeding traffic by straddling the two lanes of westbound traffic, both when the car was stopped at a stoplight and when it proceeded past the intersection with 9th Street.

[4] Officers Verma and Ricks initiated a traffic stop of Pride's car. The officers asked Pride and Brown for identification, which they provided. Officer Ricks detected the odor of raw marijuana inside the car, and he contacted Officer Leroux, who was on patrol with a trained police dog, and asked him to come to the scene. While Officer Ricks was writing a citation for the traffic infraction, Officer Leroux arrived and directed his dog to sniff around the car. The dog alerted to the presence of drugs by the driver's side door. Accordingly, the officers asked Pride and Brown to exit the car, which they did. Officer Leroux read the *Miranda* rights to Pride, while Brown sat down on some steps nearby. Officers searched the car, and, inside the trunk, they found a lunch box containing marijuana and pills that they suspected to be ecstasy. Officers also found a backpack containing clothes and a digital scale, and they found a box of 9mm-caliber ammunition in the trunk.

[5] Officer Leroux proceeded to read the *Miranda* rights to Brown, and Brown then told Officer Leroux that the clothing in the backpack was his, but he denied

knowledge of the digital scale. Officer Leroux, with assistance from Officer Kevin Price, attempted to conduct a pat-down search of Brown's body to look for weapons, but Brown pulled away from Officer Price and ran from the scene. As a result of Brown's forceful movements against Officer Price, Officer Price fell and sustained injuries. Officer Leroux and other officers ran after Brown and tackled him to the ground. After they had placed Brown in handcuffs, they searched his person and found a loaded .38 caliber pistol in his pants pocket. Officers also found baggies containing marijuana and what appeared to be heroin in Brown's pockets. Subsequent forensic analysis confirmed that Brown had marijuana and 9.93 grams of heroin on his person, and the lunch box contained marijuana and methamphetamine.

[6] The State charged Brown with three counts of possession of methamphetamine, one as a Level 3 felony, one as a Level 4 felony, and one as a Level 5 felony; two counts of possession of a narcotic drug, one as a Level 4 felony and one as a Level 5 felony; two counts of resisting law enforcement, one as a Level 6 felony and one as a Class A misdemeanor; carrying a handgun without a license, as a Class A misdemeanor; and possession of marijuana, as a Class B misdemeanor. Prior to trial, Brown filed two motions to suppress the evidence, but the trial court denied those motions. At the conclusion of his trial on April 10, 2018, a jury found Brown guilty of all charges but the two counts of possession of methamphetamine, one as a Level 3 felony and one as a Level 4 felony. The trial court entered judgment of conviction on each guilty verdict, but the court noted that the convictions for possession of a narcotic drug, as a

Level 5 felony, and resisting law enforcement, as a Class A misdemeanor, each "merged" with other convictions. Appellant's App. Vol. II at 14. Following a sentencing hearing, the trial court imposed an aggregate term of fourteen and one-half years, with thirteen years executed and one and one-half years suspended to probation. This appeal ensued.

## Discussion and Decision

### *Issue One: Fourth Amendment*

[7] Brown contends that the State violated his Fourth Amendment rights when it seized Pride's car, which raises a "question[] of law we review *de novo*." *Redfield v. State*, 78 N.E.3d 1104, 1106 (Ind. Ct. App. 2017) (quotation marks omitted), *trans. denied*. "[A]s a general matter[,] determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal," while "findings of historical fact" underlying those determinations are reviewed "only for clear error."[1] *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

[8] Brown first asserts that law enforcement officers violated his Fourth Amendment rights because the traffic stop "was the direct result of racial profiling." Appellant's Br. at 14. But Brown has not preserved this issue for

---

[1] In his brief on appeal, Brown frames his Fourth Amendment argument as a contention that the trial court abused its discretion when it admitted the evidence officers found pursuant to the traffic stop. Indeed, both parties assert that our standard of review is for an abuse of discretion, as that is our typical standard of review for challenges to the admission of evidence. *See Brown v. State*, 770 N.E.2d 275, 280 (Ind. 2002). But the issues in this appeal are constitutional questions and, as such, we review them *de novo*. *See, e.g.*, *Guilmette*, 14 N.E.3d at 40.

our review. As the State correctly points out, at no time did Brown allege or argue racial profiling to the trial court, either in his motions to suppress the evidence or at trial. The issue is waived. *See Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2004).

[9] Brown next asserts that law enforcement officers violated his Fourth Amendment rights because they did not have reasonable suspicion to initiate their traffic stop of Pride's vehicle. The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. U.S. Const. amend. IV.

> Our jurisprudence reflects two types of police encounters that implicate Fourth Amendment protection: the investigatory stop and the custodial arrest. *Clark v. State*, 994 N.E.2d 252, 261 (Ind. 2013). An investigatory stop is generally brief in duration and is constitutionally permissible so long as the law enforcement officer "has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). The custodial arrest constitutes a greater restriction upon the subject's liberty and requires a commensurately greater justification: probable cause. *Clark*, 994 N.E.2d at 261.

*State v. Keck*, 4 N.E.3d 1180, 1184 (Ind. 2014). Further, as we explained in *Bell v. State*, 81 N.E.3d 233, 236-37 (Ind. Ct. App. 2017), *trans. denied*:

> Indiana law allows pretextual traffic stops when the officer has observed a traffic violation. *See Mitchell v. State*, 745 N.E.2d 775, 787 (Ind. 2001) (pretextual traffic stops not unconstitutional

"even if the officer may have an ulterior motive of furthering an unrelated criminal investigation").

In Indiana, "[w]henever a law enforcement officer believes in good faith that a person has committed an infraction or ordinance violation, the law enforcement officer may detain that person for a time[.]" Ind. Code § 34-28-5-3. "[A] traffic stop and limited search is permissible where an officer has at least reasonable suspicion that a traffic law, or other law, has been violated." *Sanders v. State*, 989 N.E.2d 332, 335 (Ind. 2013), *reh'g denied*.

[10] Here, the question is whether the police had reasonable suspicion to support a brief investigatory stop, *i.e.*, a "*Terry* stop," of Pride's vehicle.

When determining whether an officer had reasonable suspicion for a *Terry* stop, we consider whether "the totality of the circumstances" presented "a particularized and objective basis" for the officer's belief that the subject was engaged in criminal activity. *Sellmer* [*v. State*], 842 N.E.2d [358,] 360 [(Ind. 2006)] (internal citations omitted). If an officer observes a driver commit a traffic violation, *he has probable cause*—and thus also the lesser included reasonable suspicion—to stop that driver. [*State v.*] *Quirk*, 842 N.E.2d [334,] 340 [(Ind. 2006)].

*Id*. (emphasis added).

[11] At trial, Officer Verma testified that he had observed Pride commit two traffic infractions, namely, driving with a broken taillight (Ind. Code § 9-19-6-4 (2018)) and driving while obstructing vehicular traffic (I.C. § 35-44.1-2-13(c)). We agree with Brown that the evidence is insufficient to show that Pride had

violated the taillight statute.[2] But we agree with the State that the evidence is sufficient to show that Pride had violated Indiana Code Section 35-44.1-2-13(c) to justify the traffic stop.

[12] In particular, Indiana Code Section 35-44.1-2-13(c) provides that a person who unreasonably obstructs vehicular or pedestrian traffic commits a Class C infraction. At trial, Officer Verma testified that Pride's

> vehicle was occupying two (2) lanes of travel. The vehicle was traveling westbound down Columbia Street. [They] intercepted the vehicle at 14th and Columbia. When [they] got behind it, uh, it was initially in the very right lane and then it started to move towards the left and stayed right in the middle occupying both lanes of travel. It came to a red light stop at 9th and Columbia at the intersection. When it stopped at the intersection, it was still occupying both lanes of travel to the point for [them] to stay behind the vehicle, [they] were also occupying two (2) lanes of travel, other vehicles behind [them] could not pick a lane to go in and they had to kind of just stay behind [the officers] at that point.

Tr. Vol. II at 141-42. This evidence is sufficient to show that the officers had conducted a lawful traffic stop based on reasonable suspicion that Pride had

---

[2] Indiana Code Section 9-19-6-4 provides in relevant part that a motor vehicle must be equipped with at least two taillights mounted on the rear that emit "red light[s] plainly visible from a distance of five hundred (500) feet to the rear." Here, the testimony and other evidence showed that Pride's car had one fully functioning red taillight and one red taillight with a partial break in it, causing some white light to be emitted from the taillight. A photograph showing the illuminated broken taillight shows that both red and white light was emitted. In *Kroft v. State*, 992 N.E.2d 818, 821 (Ind. Ct. App. 2013), we stated that, under the statute, there is no requirement about "only" red light being visible from a distance of 500 feet. And the evidence is insufficient to show an infraction under the statute where, as here, the State does not present evidence that the taillight "did not emit red light plainly visible from a distance of 500 feet to the rear." *Id.* We cannot say that the evidence is sufficient to show a violation of Indiana Code Section 9-19-6-4. *See id.*

committed a traffic violation by unreasonably obstructing vehicular traffic. Accordingly, Brown has not shown any violation of his Fourth Amendment rights.[3]

### Issue Two: Double Jeopardy

Next, Brown contends, and the State agrees, that, in an attempt to avoid double jeopardy concerns, the trial court improperly "merged" two of his convictions listed on the abstract of judgment. In particular, the jury found Brown guilty of two counts of possession of a narcotic drug, one as a Level 4 felony and one as a Level 5 felony, and the State argued to the trial court that the Level 5 felony was a lesser-included offense of the Level 4 felony and that the Level 5 offense should "merge" with the Level 4 offense. Tr. Vol. III at 104. Likewise, the State argued that the guilty verdict for the Class A misdemeanor resisting law enforcement count should merge with the Level 6 felony resisting law enforcement count.

"Entry of conviction for both an offense and its lesser-included offenses 'is impermissible under both state and federal double jeopardy rules.'" *Whitham v.*

---

[3] Brown asserts on appeal that the traffic stop also violated his rights under Article 1, Section 11 of the Indiana Constitution. But Brown does not provide any independent analysis under that provision of the law and facts. Accordingly, we conclude that Brown has not preserved for appellate review any independent claim under Article 1, Section 11. *See Wilkins v. State*, 946 N.E.2d 1144, 1147 (Ind. 2011) ("Because he provides no authority or independent analysis supporting a separate standard under the state constitution, any state constitutional claim is waived."). Insofar as Brown may have preserved a claim under Article 1, Section 11 for our review, for the same reasons his federal rights were not violated, neither were his rights under Article 1, Section 11, and we affirm the trial court on this issue as well.

*State*, 49 N.E.3d 162, 168 (Ind. Ct. App. 2015) (quoting *Wentz v. State*, 766 N.E.2d 351, 359-60 (Ind. 2002)), *trans. denied.*  Further, as we have explained:

> If a trial court does not formally enter a judgment of conviction on a [finding] of guilty, then there is no requirement that the trial court vacate the "conviction," and merger is appropriate. *Townsend v. State*, 860 N.E.2d 1268, 1270 (Ind. Ct. App. 2007) (quoting *Green v. State*, 856 N.E.2d 703, 704 (Ind. 2006)). *However, if the trial court does enter judgment of conviction on a [guilty finding], then simply merging the offenses is insufficient and vacation of the offense is required.  See id.*; *Green*, 856 N.E.2d at 704; *Gregory v. State*, 885 N.E.2d 697, 703 (Ind. Ct. App. 2008) (where trial court entered judgments of conviction on jury's verdicts of guilty for dealing and conspiracy, then later merged the convictions for double jeopardy reasons, such merging without also vacating the conspiracy conviction was insufficient to cure the double jeopardy violation).

*Kovats v. State*, 982 N.E.2d 409, 414-15 (Ind. Ct. App. 2013) (emphasis added).

[15]   Applying *Kovats* in a subsequent appeal, we held:

> Here, in a document captioned "Judgment," the trial court noted that [the defendant] was guilty on both counts before determining that Count II merged into Count I.  Under these circumstances, we conclude the court entered judgment on the convictions, and merger was insufficient to remedy the double jeopardy violation. *See Kovats*[,] 982 N.E.2d [at 415] (determining that the trial court entered judgment on multiple convictions and that merger without vacatur was inadequate).  We thus remand this case with instructions to vacate the conviction of Count II, operating with a blood alcohol content of .15 or more.

*West v. State*, 22 N.E.3d 872, 875 (Ind. Ct. App. 2014), *trans. denied*.

[16] The same is true here. In a document captioned "Abstract of Judgment," the trial court listed the dispositions of the Level 5 felony possession of a narcotic drug count and the Class A misdemeanor resisting law enforcement count as "Conviction Merged." Appellant's App. Vol. II at 14. This was not a sufficient remedy to the apparent double jeopardy concern. *West*, 22 N.E.3d at 875. Accordingly, we reverse and remand with instructions to vacate Brown's convictions for Level 5 possession of a narcotic drug and Class A misdemeanor resisting law enforcement.

### *Issue Three: Sentence*

[17] Finally, Brown contends that his sentence is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The Indiana Supreme Court has recently reiterated that:

> The principal role of appellate review should be to attempt to leaven the outliers . . . but not achieve a perceived "correct" result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind.), as amended (July 10, 2007), *decision clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

*Shoun v. State*, 67 N.E.3d 635, 642 (Ind. 2017) (omission in original).

[18] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id*. at 1224. Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[19] Again, the trial court ordered Brown to serve an aggregate sentence of fourteen and one-half years, with thirteen years executed. As part of his sentence, the court imposed the maximum term of twelve years for Brown's Level 4 felony conviction, I.C. § 35-50-2-5.5, as well as the maximum term of two and one-half years for his Level 6 felony conviction, I.C. § 35-50-2-7. In support of Brown's aggravated sentence, the court relied on his "significant criminal history," lack of remorse, prior probation violations, that he committed this offense while on parole from the State of Illinois, and that "he was arrested [for] another offense while out on bond for this case." Appellant's App. Vol. II at 10.

[20] Brown asserts that his sentence is inappropriate in light of the nature of the offenses because "there is nothing necessarily aggravating or mitigating about the offense[s]." Appellant's Br. at 26. And, with respect to his character,

Brown emphasizes his "extensive family support," his "difficult neighborhood circumstances" during his childhood, his parenting of his children, and his remorse. Appellant's Br. at 27.

[21] We cannot say that Brown's sentence is inappropriate in light of the nature of the offenses. When officers attempted to arrest Brown, he pushed an officer to the ground, causing injuries to the officer, and fled the scene. Officers had to chase him into the middle of a traveled city street and tackle him to get him into handcuffs. Brown had a loaded firearm on his person, and he possessed marijuana, heroin, and digital scales. Those facts suggest that Brown was not in possession of the drugs for his personal use. *See, e.g.*, *McGuire v. State*, 613 N.E.2d 861, 864 (Ind. Ct. App. 1993) (stating that circumstantial evidence of intent to deliver drugs includes possession of a large quantity of drugs, large amounts of currency, scales, plastic bags, and other paraphernalia), *trans. denied*.

[22] Likewise, we cannot say that Brown's sentence is inappropriate in light of his character. Brown's lengthy criminal history, without more, is sufficient to justify his sentence. The trial court listed his prior criminal convictions as follows: "prior felony convictions for attempted aggravated discharge of a firearm in 2008, aggravated unlawful use of a weapon in 2008, unlawful possession of a weapon as a felon in 2012 and in 2016, and armed habitual criminal in 2016." Tr. Vol. III at 110. In addition, the court noted that Brown had "a series of petitions to revoke probation[; he] committed this offense while [he was] on parole for an offense in Illinois[;] and [he was] also arrested while out on bond on this case for another case up in Chicago." *Id.* In sum, Brown

has consistently shown an inability to live a law-abiding life, and we decline his request to revise his sentence.

[23] Affirmed in part, reversed in part, and remanded with instructions.

Pyle, J., and Altice, J., concur.